NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | | |
| DINAH HUBERT and JOHN HUBERT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 05-2337 (JLL) |
| | ) | |
| PATRICK BARTELS, ESQ. and LYNCH | ) | **OPINION** |
| MARTIN, ESQ., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

For Plaintiff: Thomas D. Flinn (*Garrity, Graham, Murphy, Garofalo & Flinn*)
            Izabella Lemkhen (*Garrity, Graham, Murphy, Garofalo & Flinn*)

For Defendant: Noel E. Schablik (*Schablik and Knapp, P.A.*)
            John T. Knapp (*Schablik and Knapp, P.A.*)

**LINARES, District Judge.**

This matter comes before the Court on the motion for summary judgment filed by

Defendants Patrick Bartels, Esq. and Lynch Martin, Esq. (collectively "Defendants") on

September 30, 2009.  This Court exercises jurisdiction pursuant to its diversity jurisdiction.  28

U.S.C. § 1332.  For the reasons set forth in this Opinion, Defendant's motion for summary

judgment is denied.

## FACTS

This legal malpractice action arises from the settlement of a products liability case

brought by Dinah and John Hubert (collectively "Plaintiffs") concerning Dinah Hubert's breast

implants.  Dinah Hubert received her first set of breast implants in 1984.  (Def. Rule 56.1

Statement ¶ 6.)  After experiencing complications following the insertion of the original

implants, Dinah Hubert had the first set removed and a different set inserted in 1988.  (Id. ¶¶ 6-

7.)  After the second set of breast implants was inserted, Dinah Hubert's health deteriorated, and

she had the second set of implants removed in 1992.  (Id. ¶ 7.)

In April 1992, the Huberts retained the law firm of Garruto Galex and Cantor to represent

them in a personal injury action against Bristol Meyers Squib ("BMS"), the manufacturer of both

sets of Dinah's breast implants.  (Id. ¶ 8.)  Although a national class settlement concerning breast

implants was proceeding in the Northern District of Alabama, Plaintiffs opted out of the federal

class settlement program, and their case was assigned to Middlesex County Superior Court in

New Jersey.  (Id. ¶ 9.)  At some point in 1995, reassignment of cases within Garruto Galex and

Cantor resulted in Plaintiffs' breast implant products liability case being assigned to Patrick

Bartels, Esq. ("Bartels"), then an associate at the firm.  (Id. ¶ 10.)

Eventually, Bartels and Plaintiffs engaged in mediation with BMS on April 5, 2000, in

Houston, Texas.  (Id. ¶ 15.)  The mediation resulted in a settlement for $150,000, with Plaintiffs

only being subject to confidentiality regarding the amount of the settlement.  (Id. ¶¶ 16-17;

Hubert Cert. ¶¶ 23-25.)  The settlement also called for payment to Plaintiffs by May 8, 2000.

(Def. Rule 56.1 Statement ¶ 17.)

Subsequent to the April 5, 2000 mediation, BMS and Bartels attempted to work out a

final version of the settlement agreement for execution.  (Id. ¶ 19-20.)  During the negotiations,

Plaintiffs became dissatisfied with the final form the settlement was taking.  (Id. ¶ 18; Hubert

Cert. ¶¶ 26-28.)  These issues resulted in a motion to enforce the settlement agreement by BMS,

and a cross-motion by Plaintiffs to be released from the settlement.  (Def. Rule 56.1 Statement ¶

20.)  At a hearing on July 21, 2000, the Honorable Marina Corodemus, J.S.C., held that the

settlement was enforceable and the parties agreed to a form of release.  (Id. ¶ 22; Flinn Cert. Ex.

Q, passim; Hubert Cert. ¶¶ 30-33.)  At the hearing, Plaintiffs assented to the terms of the

settlement as modified by Judge Corodemus through Bartels.  (Flinn Cert. Ex. Q at 26:24-29:16.)

Plaintiffs subsequently sued Defendants for legal malpractice in the Superior Court of

Essex County, New Jersey.  Defendants removed to this Court on May 5, 2005.  The case was

stayed on August 30, 2005, and restored to the active trial calendar on June 9, 2009.  The instant

motion for summary judgment followed.

**DISCUSSION**

**A.      LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  See

Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

-3-

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**B.      ANALYISIS OF LEGAL ISSUE PRESENTED IN INSTANT MOTION**

Defendants' motion presents a single issue to this Court: whether or not the New Jersey

Supreme Court's decision in Puder v. Buechel, 874 A.2d 534 (N.J. 2005), compels this Court to

grant summary judgment.  Defendants argue that the strong public policy announced in Puder

bars Plaintiffs' malpractice suit because she accepted the settlement offered in her original

personal injury lawsuit.  (Def. Br. 17-18, 27-28.)  Plaintiffs maintain that Puder does not apply to

the instant facts and that summary judgment is not appropriate at this time.[1]  (Pl. Opp. Br. at 16-

32.)

Puder began as an action to collect fees from a divorce, in which the client

counterclaimed for legal malpractice concerning the divorce.  874 A.2d at 535.  In the

counterclaim, the client pled that the attorney had obtained an inadequate divorce settlement and

failed to obtain informed consent prior to accepting the settlement.  Id.

In the underlying divorce action, the original attorney had obtained a divorce settlement

to which the client originally agreed.  Id. at 536.  The client then consulted another attorney who

---

[1]Plaintiffs also assert that Defendants made impermissible arguments concerning
summary judgment on the substance of their case, and that such arguments are premature.  (Pl.
Opp. Br. at 33-34.)  This Court finds that Defendant's moving brief contains argument only as to
the issue of whether Puder bars this suit, and Plaintiffs' arguments to the contrary do not require
further attention herein.

expressed the opinion that the settlement was "ridiculously inadequate." Id. The client fired the

original attorney and filed a malpractice lawsuit against the original attorney which was stayed

pending the outcome of a hearing on the enforceability of the settlement worked out by the

original attorney. Id. After six days of testimony in the hearing to enforce the settlement, but

prior to any ruling on the enforceability of the settlement, the parties informed the motion judge

that a new settlement had been reached. Id. "The new settlement was substantially similar to the

disputed settlement[,]" and the new settlement was found by the motion judge to be entered into

knowingly and voluntarily. Id. at 536-38.

The client in Puder then sought to litigate the stayed malpractice action against the

original attorney. Id. at 538. After the trial court granted summary judgment to the original

attorney and the Appellate Division reversed, the Supreme Court of New Jersey was presented

with the question of whether or not the second settlement barred the malpractice suit. Id. at 538-

39. Holding that the public policy of New Jersey encouraging settlements was the determinative

factor, the Supreme Court of New Jersey held that the second settlement barred the client's claim

against her original attorney. Id. at 540.

In doing so, the New Jersey Supreme Court distinguished an earlier case concerning

matrimonial legal malpractice, Ziegelheim v. Apollo. 607 A.2d 1298 (N.J. 1992). In

Ziegelheim, a client entered into a settlement agreement in a divorce action allocating about

fourteen percent of the marital assets to the client after the client's lawyer advised her that she

could expect no more than ten to twenty percent of the marital property after a trial. 607 A.2d at

1301. One year later, the client sought to set aside the property settlement and recover from her

original attorney in a malpractice case. Id. at 1301. After the property settlement was found to

be enforceable, the malpractice case went forward, eventually reaching the Supreme Court of New Jersey after a grant of summary judgment to the defendant by the trial court and a partial reversal by the Appellate Division. Id. at 1301-03. The Supreme Court of New Jersey held that the malpractice action against the attorney should have been allowed to go to trial, because there was a genuine dispute concerning the competence of the original attorney, including the attorney's advice on the likelihood of the client receiving no more than twenty percent of the marital assets after trial. Id. at 1303-04. In doing so, the Ziegelheim court refused to adopt a rule whereby malpractice actions would be barred by settlement of the case unless actual fraud could be proven, finding that the public policy in favor of settlements in New Jersey was not broad enough to justify such a rule. Id. at 1304.

This Court finds that the facts of this case require the application of Ziegelheim rather than Puder. While it is true that Puder prevents some malpractice actions from going forward after settlement, it did not abrogate Ziegelheim. Puder, 874 at 542-43. In this case, there was no second settlement similar to an initial settlement, nor did the Plaintiffs seek the advice of new counsel that changed their state of knowledge with regard to a second settlement. All that has occurred in this case is that a settlement was reached and was found enforceable after the Plaintiffs sought release from the deal they had struck. Despite any regrets they may have had about their settlement negotiations, however, they continued to rely on the professional advice of Defendants. Having received information after the enforceability hearing in 2000 that there may have been a defect in the professional advice they received from Defendants in their original and only settlement, they filed the instant suit. Their position is analagous to the Ziegelheim plaintiff who, after a settlement was entered into, discovered that she might have received another thirty

percent of the marital estate had she gone to trial. While this Court agrees that the public policy

of New Jersey is strongly in favor of settlements, the New Jersey Supreme Court has permitted

malpractice suits to go forward after settlement under circumstances such as those presented

here: "[t]he fact that a party received a settlement that was 'fair and equitable' does not mean

necessarily that the party's attorney was competent or that the party would not have received a

more favorable settlement had the party's incompetent attorney been competent." Ziegelheim,

607 A.2d at 1305. This Court, therefore, denies the instant motion for summary judgment

brought by Defendants.

**CONCLUSION**

For the reasons set forth in this Opinion, Defendant's motion for summary judgment is

denied. An appropriate Order accompanies this Opinion.

DATED: February 4, 2009          /s/ Jose L. Linares

                                     United States District Judge